Colcock, J.
The defendant set up by way of discount, a deficiency of the land which was the consideration of the bond. Both surveyors agreed that a small stream, and the adjoining swamp, for one fourth of a mile in length and from two chains to four and a half chains in width, part of the same land warranted to defendant, was taken off by a title paramount to that given by plaintiff to defendant. Upon this stream, but further down, it was proved that the defendant had built a saw-mill, which for about three months. in the year would yield about one thousand feet per day; and the witness agreed; that by losing the slip of land in question, the production of the saw-mill would be lessened to about four hundred or five hundred feet per day, because the head of water would be much lessened; the defendant being unable to raise the mill pond so as to flow the water back upon the land so taken off by the paramount title. The only dispute, therefore, was, what was to be allowed in discount for this piece of land. For the defendant it has been said, that the measure of damages should be the value of the land, (considered as a necessary appendage to the saw-mill, which had been built under a belief that *585 the title of the plaintiff was good for the whole extent of the land; and that it was of no consequence whether the improvement, that is, the , , , . saw-mill, was directly on the land or not, so it became diminished in value by the loss of the said land,) and not merely the intrinsic value considered without relation to the saw-mill, which had been erected under a confident belief that the warranty of the whole land would be fulfilled. But the presiding judge charged the jury, “ That the measure of the defendant’s discount should be the intrinsic value of the land so lost, considered by itself; and not its value as increased by the saw-mill, inasmuch as it had not been erected directly upon the land so lost to the defendant, unless they presumed the defendant, at the time of purchase, had intended to erect such a saw-mill. The jury allowed only 8125 discount, and the motion is for a new trial. 1st, Because the judge mistook the rule of law, which should be the true measure of the defendant’s discount. 2nd, Becau.se the verdict is against law and evidence, particularly in not giving the defendant the damages he must have sustained in the injury done to his saw-mill by the loss of the land taken off, though not erected upon the very land in question.
In determining this question, I find considerable difficulty arising from the diversity of opinion which has existed in ancient, as well as modern decisions, on this subject. In looking to the source from whence this responsibility as to the land took its rise, we look to the old common law doctrine $ and although *586 ^ie *orms Lw have been greatly altered, the prin-eiples still remain. How was land originally held? Of some superior lord, who warranted to the tenant; 1 # 7 ^ ' and, if he were evicted by a title paramount, restored him other land of equal value, called his Es-cambium. 1st Reeves, 448. But after the statute of quia emptores, this was considered a mere personal contract; and an express elause of warranty was introduced, which is a kind of covenant real, as Blachstone says, 2nd Vol. page 301, and in Vineras Abridgment, page 416, and 428. Warranty, if land be improved by the industry of the feoffee, the plaintiff in warrantia chartce shall recover only the value at the time of donation.” To this warranty has succeeded the personal contracts usually contained in deeds. Now the question is, does any other and greater responsibility arise from these covenants, than did from the ancient warranty ? I apprehend none. I conceive that the introduction of a covenant of seisin was only intended to give the grantee a speedy remedy, if he found the title of grantor was defective; for under that covenant, he might sue before eviction, if he discovered a defect in the title: but under the covenant for quiet enjoyment, he could not. In this case, the deed was not produced, and, therefore, it is not known what covenants it contained; but I consider the case as one of eviction, when if the deed contained both, both would be broken.
It seems difficult to find an adjudged case in the English law books, since the year books of 30th Ed *587 ward 3rd, 14 B, directly in point, which induces me to believe the point has long 'been at rest in England; and this opinion is greatly strengthened by many analogous cases, as Speak vs. Speak, 1st Vernon, 271. and. Beaty vs. Dermor, 12th Modern Reports, 526. The civil law rule is certainly objectionable, for it is not founded on any principles of reason or justice; and, therefore, cannot assist the judgment in determining on the true measure of damages. It is said that if a man is deprived of his property, he ought to receive its value at the time of such deprivation; and, therefore, one who had sold without a title, should pay the value at the time of eviction. But does he contract to do so? This appears to me to he the consideration. What is the contract? That the vendor warrants the worth of property so much as it is when he sells it. Not that, if it should increase in value, or be improved to twenty times the original worth, that sum should be reimbursed on eviction. Who, I would ask, would enter into such a contract? Who would venture to sell under such responsibility ? But what in my opinion shews the fallacy of the doctrine contended for, is, that the rule is not reciprocal. If the grantor is liable for any increase of value which may exist at the time of the eviction, what shall he he liable for, if the value be diminished? Suppose a valuable rice plantation be sold, and afterwards inundated by the sea, and the dams broken, and the soil washed off, and then the grantee evicted, what shall he recover? What he paid, or the value at the „■time of eviction? I imagine it would be said *588 by the grantee, you must pay me what I gave for it, for it is not now the thing you sold} nor can any cage or djctum foun(i t0 s{10w that he could be liable for less than the consideration money mentioned in the deed. I conceive that the case is settled by the case of Furman and Elmore. But it was said there is a difference ; I, however, can perceive none in principle. The cases of Staats vs. the Executors of Ten Eyck, 3rd Caines, page 111; Pitcher vs. Livingston, 4 Johnson, page 1; Bender vs. Fromberger, 4 Dallas, page 436; and Lowther vs. the Commonwealth, 1st Henning & Mumford, p. 201; all confirm the rule that the measure of damages shall be the consideration money, with costs and interest. Presuming that that was the sum found by the jury in this case, I am against the motion for a new trial.
Nott, J.
The only question submitted to the Court in this case, is, whether a person, in an action of covenant on a general warranty of title, is entitled to recover the value of beneficial improvements put upon land, from which he has been evicted by a title paramount. In the case of Furman vs. Elmore, it was determined that the price of the land at the time of sale, and not at the time of eviction, should be the rule or measure of damages. That seems to be admitted on all sides to be the common law rule. It was also a principle of the feudal system. The feudal investiture created a reciprocal obligation between the lord and vassal, to wit; on the part of the *589 lord, that in consideration of the services he received, he would defend the title of the vassal; and on the part of the vassal, that he would render the services due to the lord. Yet this obligation was implied by law and not created by any express words; and in ease of eviction, the lord was bound to give other lands of equal value ; Co. Litt. 365. and the rule of damage was the price at the time of donation. Reeve’s Hist. Eng. Law, 446. Afterwards, when express warranties were introduced, they were considered of the same import and to amount to a feudal contract. Gilbert on Tenures, 124. “ For the warranty was an express undertaking to do the same thing as the feudal lords used to do to their tenants, and under the same penalties.” Gilbert’s Tenures. And the express warranty could go no further than the warranty implied in the feudal contract, since it came in the place of it. Gilbert’s Tenures, 127. In most of the American courts, as far as their decisions have come to my knowledge, the same rule has obtained. 3 N. Y. T. R. 113. 4 Johnson, 1. 4 Dallas, 441. 1st Henning & Mum. 202. In the states of Massachusetts and Connecticut, a different rule has been adopted, but they both admit that they have departed from the common law. If then the decision in the case of Furman and Elmore is agreeable to the principles of the common law, it would seem to be conclusive in this case. We can only look to the value at the time of the sale ; we cannot enquire what has been done since. I do not find any case in the English books, embracing this question; but the *590 case of Pitcher vs. Livingston, 4 Johnson, 1. is direetly in point. Judge Spencer, who dissented from the rule laid down by the other iudares, bottomed , his opinion on the particular covenants m the deed |n case? that ground does not exist. One of the principal reasons why the improved value cannot he recovered, is because in construing a covenant you cannot go beyond the subject-matter of it. The land alone is the subject-matter of the covenant in this case, and not the subsequent improvements. Besides, reciprocity is thought to be one of the best rules by which to test the correctness of any legal principle; and according to that, if you take into consideration the improved value at the time of eviction, the converse ought to be adopted. But, I believe, the diminished value has never been made the rule by the common or civil law. Inconveniences will probably be found to result from any rule that can be laid down, and, therefore, the safest way is. Stare de cisis. Let the motion be discharged.
Smith, J.
This principle has been already decided in the case of Furman vs. Elmore, at Columbia, wherein the court were of opinion that the price paid for the land, with interest, up to the time of recovery, was the legal measure of damages. I am, therefore, of opinion, as the defendant has by this verdict obtained that measure of damages, that a new trial ought to be refused.
*591 Grimke, J.
After the derision which took place in the case of Furman vs. Elmore, quoted above, in which the nature and extent of warranty was fully entered into, and the inapplicability of the civil law . . J -,. doctrine of compensation m .such cases was discussed } there will be little opening in the present case to add any thing new on- that subject. I take it for granted that the question of civil law compensation is for ever put to rest in this Court, after the last mentioned decision : We have then only to consider what is the rule laid down by the common law in Cases of this kind. In Co. Litt. 388. b. it is said, warranty extends tp warrant the land in the same plight as it was at the time of the warranty. Again; a warranty is a covenant real annexed to lands or tenements, whereby a man and his heirs are bound to warrant the same lands, and to render in value, if they are evicted by a former title. Co. Lit. 365. a. Now by this, it appears, that a warranty does not extend further than that the party selling the land, shall put the purchaser in the same situation that he ■was in at the time of the purchase; and if he is evicted, to render in value the land so lost. The reason which the common law gives, is, because the covenant is broken as soon as the deed is delivered. Now, this is precisely the case here ; for if this was not the rule, how uncertain, how fluctuating would be the compensation to be recovered ? If this was not the rule, it would make the vendor guarantee beyond his agreement. In this case, the plaintiff did not stipulate that this was a good mill-seat; he did not sell it as such ; he did not covenant that the *592 land taken away should make a good mill-pond; nor does it appear that it was in the contemplation of the defendant, at the time of purchase to erect a mill f 1 there. The intentions, then, of both parties were game> One to sell land only; the other to buy-land only. All then that he can recover, in my ■-opinion, is the price of the land and the interest on such sums, if he has had no actual use of the land. But this case appears still stronger, when we consider that the improvements are not actually taken away, and that the defendant’s set-off is founded rather on consequential damages, than any actual loss of the improvements which he has put upon the land. This would, indeed, be extending the doctrine which has been contended for by the . defendant still further, and for which there seems to be no good ground of law or reason. I am, therefore, of opinion, that the jury decided correctly in giving the valué of the land at the time of the purchase., and consequently against a new trial.